COLLARD (INGLE v.). See Cases Nos. 7,042 and 7,043.

## Case No. 2,997.

### In re COLLATERAL LOAN & SAV. BANK.

[5 Sawy. 331.][1]

District Court, D. California. Dec. 2, 1878.

CORPORATION BY-LAW — RESOLUTION TO GO INTO BANKRUPTCY — PETITION BY DIRECTOR TO DISMISS BANKRUPTCY PROCEEDINGS.

A by-law of a corporation provided that, "in case any stock of the corporation is not represented at any meeting of stockholders, either in person or by proxy, such stock may be voted at such meeting by any director selected by the board of directors for that purpose, and such election shall be deemed by the stockholders of the corporation a power of attorney for such purpose." A meeting called for the purpose of determining whether the corporation should go into bankruptcy was attended by a small number of stockholders, but the vote of the absentees was cast under the provisions of the above by-law. A petition was thereupon filed by the president, and the corporation adjudged bankrupt. Nearly eight months afterwards a director, who had in the mean time been sued for negligence in the management of the company's affairs, filed a petition to have the proceedings dismissed as void ab initio. It appearing that the corporation was, at the time of the meeting, hopelessly insolvent, and that no difference of opinion as to the propriety of going into bankruptcy existed among the stockholders, and that the objection is now made after the lapse of nearly a year, by a director for the purpose of evading an alleged liability for negligence: Held, that the prayer of the petition should be denied.

In bankruptcy.

Bishop & Fifield, for assignee.

A. W. Thompson and L. D. Latimer, for Leander Sawyer.

HOFFMAN, District Judge. On the thirty-first of December, 1877, a petition was filed by Joseph S. Spear, Jr., president of the above-named corporation, praying that it be adjudged a bankrupt. The adjudication was accordingly made by the register, the first meeting of creditors duly called, and an assignee chosen on the twenty-third of January, 1878.

On the fourth of June a bill of complaint was filed by the assignee against Leander Sawyer and others, former trustees of the corporation, to enforce their liability for alleged negligence in the discharge of their du-

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

ties as trustees. To this bill the defendants demurred, and on the twenty-seventh of August, 1878, the demurrers were overruled. On the fifth of September, 1878, Leander Sawyer filed a petition praying that the petition in bankruptcy be dismissed. On the eleventh of September, 1878, the assignee filed his answer to Sawyer's petition; and on the second of October, the application was argued and submitted on the petition, answer and affidavits filed in support of them.

On behalf of the petitioner Sawyer, it is contended that the petition in bankruptcy shows upon its face that the authority to file the petition was not given by a vote of a majority of the corporators at a legal meeting, "called for the purpose," as required by the bankrupt act [of 1867 (14 Stat. 521)]. But this objection, which rests upon what I must consider a forced and unnatural construction of the language of the petition, it is unnecessary to consider, for it appears that in fact the call for the meeting stated its purpose to be "to vote upon the proposition to put said bank into bankruptcy." The call was, therefore, in strict conformity with the act.

But the principal objection relied on in support of the petition to dismiss, is that it affirmatively appears that no legal meeting of the stockholders was held, and that no vote to authorize the president to file the petition in bankruptcy was legally passed by a majority of the stockholders. It is admitted that at the alleged meeting only fifteen shares, out of two hundred, were represented, either in person or by written proxy. The vote of the absentees was cast by a person selected for that purpose by the board of directors at a previous meeting. The authority to make this selection, and of the person so selected to vote the stock of the absentees, was supposed to have been conferred by the fifteenth article of the by-laws of the corporation. That article is as follows: "In case any stock of the corporation is not represented at any meeting of stockholders, either in person or by proxy, such stock may be voted at such meeting by any director selected by the board of directors for that purpose, and such selection shall be deemed by the stockholders of the corporation a power of attorney for such purpose."

It is contended that this by-law was never legally adopted by the stockholders; and, secondly, that if it had been, it would have been wholly void and inoperative.

It is not pretended that the by-laws of the corporation were adopted by "a majority of the stockholders at a meeting called by the president on a notice of not less than two weeks, specifying the object of the meeting," as required by section 301 of the Civil Code of this state, as originally passed. They were adopted under the provisions of that section as amended. The amended section enacts that "the written assent of the holders of two thirds of the stock, or of two thirds

of the members if there be no capital·stock, shall be effectual to adopt a code of by-laws without a meeting for that purpose." The records of the corporation show that the written assent of the requisite number of stockholders was obtained.

The second objection presents more difficulty. But before considering the validity of the vote taken at the meeting held under the by-law in question, it is important to advert to the circumstances under which it was called. The corporation was notoriously and hopelessly insolvent. Its property had been attached by one creditor, and a receiver appointed at the suit of another. To secure the equal distribution of its assets among all the creditors, a proceeding in bankruptcy was indispensable. There is no reason to suppose that the propriety, if not the necessity of authorizing those proceedings was not unanimously recognized. The call for the meeting was published in a newspaper of extensive circulation. It may confidently be affirmed that the resolution adopted expressed the wishes of all the stockholders. If any error has been committed, it has been one of·form, and not of substance, and it has arisen from supposing that legal expression might be given to the wishes of the stockholders by proceeding under the fifteenth article of the by-laws.

By the law of this state, corporations are authorized to provide by by-laws for "the mode of voting by proxy" (Civil Code, § 303), and to make by-laws not inconsistent with any existing law for the management of their property, the regulation of their affairs, and for the transfer of their stock (Id. § 354); and savings-banks may by by-laws "fix and define the privileges to be accorded to, and the obligations to be imposed upon its capital stock" (Id. §§ 572, 573). The language of these provisions is as comprehensive as could have been used. The only limitation is, that the by-laws "shall not be inconsistent with any existing law." No "existing law" is cited which prohibits or is inconsistent with the by-law in question. If it is to be treated as invalid, it must be on the general principle that by-laws must be reasonable and just, and not in contravention of public policy, or oppressive to stockholders or persons dealing with the corporation.

There can be no doubt that the power conferred by the by-laws in question might be grossly abused. If the board of directors of a corporation can represent and cast the vote of all the absentees at any meeting of stockholders, no matter how small the number actually present may be, the desire to perpetuate their own power, or to carry out their own policy, might induce them to increase the number of absentees by giving as little publicity to the call for the meeting as would be consistent with a formal compliance with the law, and at the meeting so called, by voting the unrepresented stock, take action in opposition to the wishes, or interest of the majority of the stockholders.

If a case presenting these or similar features should arise, it may well be that the courts would refuse to recognize the by-law as valid to authorize such an abuse of its provisions. But the case at bar presents no such features. As before observed, there is no reason to believe that the resolution taken by the meeting did not express the wishes, as it unquestionably fulfilled the duty, of the stockholders. It has been acquiesced in for a period of more than eight months. It is not now objected to by a stockholder as such. It is attacked by a defendant in a suit by the assignee for the mere purpose of defeating that action. There is no suggestion that the provisions of the by-law were not known to the stockholders; their certificates showed on their face that they were held "subject to the by-laws."

It may reasonably be presumed that as the propriety of going into bankruptcy admitted of no question or debate, the stockholders abstained from attending the meeting on the supposition that under the provisions of the by-law a meeting could lawfully be held, and the requisite authority given to the president, whatever the number in actual attendance might be.

These considerations have led me to the conclusion that although a by-law like the one under consideration might be held invalid and inoperative to give legality to proceedings which savoured of fraud, or abuse, or were in violation of the wishes of the stockholders, yet, under the circumstances of this case, it should not be held to be so absolutely void as to totally divest the meeting held under it of the character of a legal meeting of stockholders, and to render its action so nugatory that the proceedings in bankruptcy taken pursuant to its resolution must be pronounced void ab initio.

It may be observed, in addition, that even if this view be erroneous, and it be considered that the president of the corporation was wholly unauthorized to file the petition, it may well be doubted whether the court should, after the lapse of so long a time, entertain the inquiry. In the case of In re Jefferson Ins. Co. [Case No. 7,253], the petition was filed by an officer of the company by order of the board of directors. Four years afterwards one of the stockholders filed a petition praying that the proceedings be dismissed as void from their inception; but the court held that "after this lapse of time it would presume that the stockholders had authorized the petition to be filed, and that a stockholder who had remained silent for more than four years would not be heard to impeach the validity of the proceedings in bankruptcy." In the case of In re Baltimore Co. Dairy Ass'n [Id. 828], a motion to set aside proceedings, made on the same ground, by a stockholder who had remained silent for "nearly a year after the adjudication," was overruled. In both of these cases,

the language of the supreme court in Zabriskie v. Cleveland, etc., R. Co., 23 How. [64 U. S.] 398, is referred to. That court says: "The supreme court of Ohio has recognized the obligation of corporators to be prompt and vigilant in the exposure of illegality or abuse in the employment of their corporate powers, and has denied assistance to those who have waited till the evil has been done, and the interest of innocent parties has become involved."

The prayer of the petition is denied.

----

COLLECTOR (CAVAROC v.). See Case No. 2,529.

COLLECTOR (COTTON PRESS CO. v.). See Case No. 3,271.

COLLECTOR (GRAHAM v.). See Case No. 5,663.

COLLECTOR (PASSAVANT v.). See Case No. 10,790.

COLLECTOR OF CHARLESTON (GILCHRIST v.). See Case No. 5,420.